MATTER OF PIMENTEL

In Deportation Proceedings

A-14997703

*Decided by Board January 30, 1967*

Notwithstanding statutory eligibility for voluntary departure, in the absence of other appealing factors such relief is denied, as a matter of discretion, in the case of respondent, a 24-year-old single male, whose first and only entry into the United States was made as a stowaway, in knowing and intentional violation of the immigration laws; who has been here only about one year; and who has no close family ties in this country.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—Stowaway.

ON BEHALF OF RESPONDENT:
Peter J. Needham, Esquire
53 State Street
Boston, Massachusetts 02109
(Brief filed)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

Respondent appeals from the decision of the special inquiry officer finding him deportable as charged and denying voluntary departure in the exercise of discretion.

Respondent is a 24-year-old single male alien, a native and citizen of Portugal, who entered the United States at Baltimore, Maryland on or about October 13, 1965 as a stowaway on a ship which he had boarded surreptitiously in Lisbon, Portugal. The record shows that he knew the ship was coming to the United States and stowed away on it for that reason. Deportability as charged in the order to show cause was conceded at the hearing.

It has been established that respondent worked as a fisherman for seven years and thereafter served in the Portuguese navy, receiving his honorable discharge therefrom on August 3, 1965. Respondent testified that for some time it had been his hope to come to the United States so that he could obtain employment and remain here (Tr. pp. 12, 13). He learned of the particular ship he boarded by reading the maritime papers to see which ships were coming to the United States. He boarded the ship late on the day it sailed, hid himself below until it sailed, and then transferred to a lifeboat. He remained hidden in

50

the lifeboat during the entire passage from Portugal to the United States, using the food and supplies with which the lifeboat was normally stocked. He left the ship very early in the morning after its arrival in the United States and simply walked out unobserved. He then travelled to Newark, New Jersey where he had relatives and apparently began to work ashore immediately after his arrival (Tr. pp. 18–15).

The record shows that respondent has no criminal record either in the United States or in Portugal and there is nothing to indicate that he has ever engaged in subversive activities. He has testified that he has sufficient passage money to effect his departure from the United States if permitted to leave voluntarily, and that he would be willing and able to depart within the time set by the Government. Although the majority of his family including his mother, father and sisters are in Portugal, he has some cousins and friends in the United States and it is indicated that he has a fiancee, a Miss Susan Gomez, who lives in New Bedford, Massachusetts, and whom he hopes to marry in the near future.

Respondent was apprehended at a bus station in Philadelphia. When he was first spoken to by an officer of the Immigration Service there, he did not tell the officer that he was Portuguese but said instead that he was Spanish and testified that his reason for this was the following: "I thought since there are so many Spanish speaking and Puerto Ricans here, he would let me go." (Tr. p. 15). He apparently also advised the immigrant inspector that he had immigrant papers in another bag on another bus, as part of his effort "to see if they would let me go." (Tr. p. 16).

The special inquiry officer rendered an oral decision at the hearing, finding respondent deportable, and in effect finding him statutorily eligible for voluntary departure. He summarized the factors in the case which he took into consideration in deciding whether there should be a favorable exercise of discretion. The record shows there are few, if any, equities respondent can claim. He is single, and his parents and sisters all live in Portugal. His closest relatives in the United States are cousins. His first, and only entry into the United States, was made as a stowaway, in knowing and intentional violation of the immigration laws, and as part of a design to live and work here without complying with the immigration laws. He was in the United States for barely a year when he was apprehended. He lied to the apprehending immigration officers, both about his nationality and his immigrant status, in an effort to continue his illegal stay here. Respondent's claim that he is engaged to be married to a native-born citizen of the United States was characterized by the special inquiry officer as a

neutral factor, weighing neither for nor against him. In respondent's favor are his lack of a criminal record, absence of subversive political activities, availability of funds to effect his own departure, honorable discharge after completion of Portuguese naval service and seven years of work as a fisherman. Balancing these factors, the special inquiry officer concluded that the favorable were not strong enough to overcome the unfavorable, and denied voluntary departure in the exercise of discretion.

On appeal, counsel argues that inasmuch as respondent established eligibility for voluntary departure, and in view of his past record and background, the denial of voluntary departure was arbitrary, unreasonable and a clear failure of the special inquiry officer to exercise any discretion in the matter.

Counsel's argument notwithstanding, the showing of good moral character, without more, does not justify a grant of voluntary departure. Such a showing is a preliminary factor, going to the establishment of statutory eligibility, which must be satisfied before discretion can be exercised. The granting of discretionary relief is an act of administrative grace, and to warrant it there must be a showing of equities over and above the factors going into statutory eligibility. We do not find them here.

Counsel contends in effect that the stowing away was the impulsive act of a young boy. The record shows that it was not a spur of the moment seeking of adventure by an adolescent; it was done by a 23-year-old, who testified that ever since he had a little knowledge of life it had been his hope to come to the United States and obtain employment and remain here, and who knew of the ship's destination before boarding it because he had read it in the maritime papers (Tr. pp. 12–13). That respondent comes of a good family and is the son of a member of the Portuguese merchant marine who allegedly comes to the United States frequently as a crewman hardly lessens the nature of his offense (stowing away, it may be noted, is a criminal offense defined by 18 U.S.C. 2199, punishable by a fine of up to $1,000 or imprisonment of up to a year, or both). Rather, it makes it all the more likely that respondent knew he would be violating the immigration laws of this country by stowing away and entering the United States surreptitiously.

That this is respondent's first violation of the immigration laws likewise does not weigh heavily in his favor, since this is his first and only coming to the United States, and every facet of it, from the moment of his entry into the territorial limits of the United States, has been in violation of our laws. When discovered by Immigration Service officers in a bus station in Philadelphia, he admittedly lied

to them about his nationality and immigration status in an effort to prolong his illegal stay here.

Stowaways are, and have been for many years, treated separately in our immigration laws, because of the problems they create in the enforcement of those laws. They were first made excludable by the Act of 1917, with the possibility that they might be admitted in the discretion of the Attorney General if they were otherwise admissible (*e.g.*, had valid visas and/or other necessary documentation). In 1940, stowing away was made a criminal offense. In 1952, upon the enactment of the Immigration and Nationality Act, excludability was made absolute for alien stowaways caught before they had made an entry, with no discretion in the Attorney General to admit them, whether they were otherwise admissible or not. They are not entitled to be landed in the United States other than temporarily for medical treatment or in connection with arrangements for their departure or removal from the United States, and are not entitled to any sort of hearing to determine whether they are eligible to enter the United States (Section 273(d) of the Immigration and Nationality Act). It has, as a corollary, become a matter of policy not to grant voluntary departure to an alien who enters the United States as a stowaway unless there are appealing factors in his case over and above statutory eligibility (Cf. *Matter of P—*, 5 I. & N. Dec. 307).

It is within the discretion of the special inquiry officer to determine whether such factors exist. Frequently used as guidelines are the length of time the alien has been in the United States, whether he has close family ties here, and whether there are any exceptional factors in his case which would warrant special consideration. Here, after rendition of his decision, the special inquiry officer declared:

I wish to state that under section 244(e) of the Immigration and Nationality Act voluntary departure is discretionary even though the respondent establishes that he has been a person of good moral character for the past five years. I did not deny his request for voluntary departure on the ground that he was statutorily ineligible therefor. I denied it as a matter of discretion. In my opinion this respondent has absolutely nothing working for him in this case. * * * (Tr. p. 19.)

From our own reading of the record, we consider that the special inquiry officer's evaluation of respondent's situation is a valid one, and that the equities upon which to base a discretionary grant of voluntary departure to a stowaway, with no ties in this country, who has been here for only a year, are absent. The respondent has shown no convincing reason why he should be permitted to escape the legal consequences of his unlawful entry and stay in the United States.

ORDER: It is ordered that the appeal herein be and the same is hereby dismissed.